1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANA MARIE HANSON,                )    Case No. EDCV 08-1031 JC
                                 )
                    Plaintiff,   )
                                 )    MEMORANDUM OPINION
           v.                    )
                                 )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security,                        )
                                 )
                    Defendant.   )
_____  )

**I.    SUMMARY**

On August 7, 2008, plaintiff Ana Marie Hanson ("plaintiff") filed a

Complaint seeking review of the Commissioner of Social Security's denial of

plaintiff's application for benefits.  The parties have filed a consent to proceed

before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary

judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

Court has taken both motions under submission without oral argument.  See Fed.

R. Civ. P. 78; L.R. 7-15; August 11, 2008 Case Management Order, ¶ 5.

///

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On September 15, 2005, plaintiff filed an application for Disability

7    Insurance Benefits.  (Administrative Record ("AR") 86-90).  Plaintiff asserted that

8    she became disabled on April 7, 2004, due to depression with anxiety, panic

9    attacks, stress, paranoia, obsessive behavior, jumpiness/shakiness, difficulty in

10   balancing with swaying while walking, agoraphobia, sleeping problems,

11   restlessness and fatigue.  (AR 100).  The ALJ examined the medical record and

12   heard testimony from plaintiff and a vocational expert on June 28, 2007.  (AR 22-

13   52).

14   On September 13, 2007, the ALJ determined that plaintiff was not disabled

15   through the date of the decision.  (AR 14-21).  Specifically, the ALJ found:

16   (1) plaintiff suffered from the following severe impairment: a depressive disorder,

17   not otherwise specified (AR 16); (2) plaintiff did not suffer from an impairment or

18   combination of impairments that met or medically equaled one of the listed

19   impairments (AR 16-17); (3) plaintiff could perform a full range of work at all

20   exertional levels with moderate non-exertional limitations[2] (AR 18); and

21   (4) plaintiff could perform her past relevant work (AR 21).

22   ///

23

24

25   [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196

26   (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
     Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of

27   application of harmless error standard in social security cases).

28   [2]The ALJ determined that plaintiff has moderate limitations in carrying out detailed tasks,
     maintaining attention and concentration for extended periods, and responding appropriately to
     changes in a work setting, with no episodes of decompensation of extended duration.  (AR 18).

On May 30, 2008, the Appeals Council denied plaintiff's application for review.  (AR 1-3).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

///
///
///
///

3

(4)   Does the claimant possess the residual functional capacity to perform her past relevant work?[3]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must ""consider the record as a whole, weighing both evidence that supports and

---

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 404.1545(a).

4

1  evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v.</u>

2  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

3  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

4  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

5  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

6  **IV.   DISCUSSION**

7  **A.    The ALJ Did Not Fail Adequately to Develop the Record**

8  Plaintiff contends that the ALJ failed adequately to develop the record by

9  obtaining updated medical records from Dr. Ruby Jan Sia, an internal medicine

10  physician, who was plaintiff's treating physician.  (Plaintiff's Motion at 5).  This

11  Court disagrees.

12  **1.    Applicable Law**

13  An ALJ has an affirmative duty to assist the claimant in developing the

14  record at every step of the sequential evaluation process.  <u>Bustamante</u>, 262 F.3d at

15  954; <u>see</u> <u>also</u> <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has

16  special duty fully and fairly to develop record and to assure that claimant's

17  interests are considered).  "The ALJ's duty to develop the record fully is []

18  heightened where the claimant may be mentally ill and thus unable to protect her

19  own interests." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001)

20  (citation omitted).   The ALJ's duty is triggered "when there is ambiguous

21  evidence or when the record is inadequate to allow for proper evaluation of the

22  evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation

23  omitted).

24  **2.    Analysis**

25  In this case, the ALJ's duty to develop the record further was not triggered.

26  Plaintiff does not argue that the evidence of plaintiff's impairments is ambiguous,

27  or that the record as a whole was inadequate to allow for proper evaluation of the

28  evidence.  Even if it was, after the hearing the ALJ subpoenaed additional medical

1  records plaintiff identified as missing, and held the record open until he received a
2  response.  (AR 50-51, 213).  The ALJ also permitted plaintiff to submit any
3  additional evidence of her own while the record remained open.[4]  (AR 51).
4  Plaintiff, however, did not provide any additional information.  This was sufficient
5  to satisfy the ALJ's duty fully and fairly to develop the record.  See Tidwell v.
6  Apfel, 161 F.3d 599, 602 (9th Cir 1998) (ALJ satisfied duty fully and fairly to
7  develop record by keeping record open after hearing to allow supplementation of
8  record); see also Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ may
9  discharge duty fully and fairly to develop record in several ways, including:
10  subpoenaing claimant's physicians, submitting questions to claimant's physicians,
11  and continuing hearing to augment record).

12       The ALJ was not required further to develop the record by re-contacting Dr.
13  Sia.  Accordingly, a remand or reversal on this basis is not warranted.

14       **B.    The ALJ Properly Evaluated Medical Opinion Evidence**

15       Plaintiff contends that the ALJ failed to discuss some of the opinions and
16  conclusions expressed in examination notes and a disability report from Dr. Sia,
17  and therefore erroneously ignored probative medical opinion evidence.
18  (Plaintiff's Motion at 2).  Specifically, plaintiff alleges that the ALJ ignored Dr.
19  Sia's opinions that plaintiff (1) "suffers from depression and anxiety;" (2) "has
20  trouble with concentration;" (3) is "socially withdrawn;" (4) "wakes up at night;"
21  and (5) was "disabled from December 28, 2005 to April 30, 2006."  (Plaintiff's
22  Motion at 2).  This Court concludes that the ALJ did not materially err in his
23  consideration of Dr. Sia's opinions.
24  ///
25
26
27       [4]The ALJ told plaintiff at the end of the administrative hearing that he would keep the
    record open pending a response to his subpoena, and that, "in the meantime, if you have any
28  other additional records on your own that you want to submit, you better get them to me before
    that time . . . ."  (AR 51).

6

1

### 1.    Pertinent Facts

2

#### a.    Statements of Plaintiff's Treating Physician

3    Dr. Sia treated plaintiff for high blood pressure, anxiety, and depression

4  from March 5, 2004, through the date of the administrative hearing.  (AR 85, 103,

5  153-75).  Dr. Sia's progress notes for June 15, 2005, reflect that plaintiff suffered

6  from "severe anxiety."  (AR 168).  In a December 28, 2005, Physician's

7  Supplementary Certificate, Dr. Sia diagnosed plaintiff with "depression and

8  anxiety," noted that plaintiff experienced trouble with concentration, and

9  estimated that plaintiff would be able to work on April 30, 2006.  (AR 161).  Dr.

10  Sia's progress notes for December 28, 2005, reflect that plaintiff was "still socially

11  withdrawing."  (AR 159).  Subsequent progress notes in January and March 2006

12  reflect that plaintiff "[woke] up every night," continued to experience difficulty

13  with concentration, and suffered from anxiety and depression.  (AR 154, 156).

14

#### b.    Consultative Examining Psychiatrist Opinions

15    On September 26, 2005, Dr. Ernest A. Bagner, III, a consultative

16  psychiatrist, conducted a psychiatric evaluation of plaintiff.  (AR 176).  Dr.

17  Bagner noted in connection with a mental status examination that plaintiff was

18  "alert and oriented to person and place," and demonstrated "no evidence of

19  auditory or visual hallucinations or paranoid delusions."  (AR 176).  In his

20  functional assessment, Dr. Bagner noted that plaintiff had difficulty with

21  concentration and memory, had difficulty sleeping, and had a diminished interest

22  in doing daily activities.  (AR 176).  Dr Bagner further indicated that plaintiff was

23  "able to carry out simple three-part commands, but had some difficulty in doing

24  so."  (AR 176).  Dr. Bagner diagnosed plaintiff with "depressive disorder not

25  otherwise specified," opined that she was then unable to work, and concluded that

26  she could return to work in two months, *i.e.*, on November 26, 2005.  (AR 176).

27    Approximately a month later, on October 22, 2005, Dr. Jobst Singer, a

28  consultative psychiatrist, conducted a psychiatric evaluation of plaintiff.  (AR 177-

80).  Plaintiff complained of depression, but denied experiencing auditory or visual hallucinations.  (AR 179).  After examining plaintiff, Dr. Singer found "[plaintiff's] ability to understand, remember and perform instructions [was] unimpaired for simple tasks and mildly impaired for complex tasks."  (AR 179).  Dr. Singer observed "no psychiatric factors . . . that would significantly interfere with [plaintiff's] ability to complete a normal day of work" other than plaintiff's reported "anxiety episodes."  (AR 179-80).  Dr. Singer also noted that plaintiff's ability to interact with coworkers, the public, and supervisors was "not impaired."  (AR 180).  Dr. Singer diagnosed plaintiff with depression not otherwise specified.  (AR 177).

### c.   Consultative Reviewing Psychiatrist Opinions

On November 9, 2005, a reviewing psychiatrist, Dr. K.D. Gregg, completed a psychiatric review technique form for the period of April 7, 2004 to November 5, 2005.  (AR 181-94).  Dr. Gregg opined that plaintiff had mild restrictions in her activities of daily living, mild difficulties in maintaining social function and in maintaining concentration, persistence or pace, and that she had had no episodes of decompensation of extended duration.  (AR 191).

On March 9, 2006, Dr. H. Amado, a state agency psychiatrist, completed a Psychiatric Review Technique form.[5]  (AR 199–212).  Dr. Amado opined: Plaintiff had a severe affective disorder and anxiety-related disorder.  (AR 199).  She suffered no limitations in activities of daily living, mild difficulties in social

///

///

///

---

[5]In a mental residual functional capacity assessment also completed on March 9, 2006, Dr. Amado opined that plaintiff was moderately limited in her ability to (i) understand, remember and carry out detailed instructions; (ii) maintain attention and concentration for extended periods; (iii) respond appropriately to changes in a work setting, and (iv) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (AR 195-96).

1  functioning, moderate difficulties in concentration, persistence or pace, and no

2  episodes of decompensation.[6]  (AR 209).[7]

3  ### d. The ALJ's Decision

4  In his September 13, 2007, decision, the ALJ thoroughly summarized the

5  medical opinions and evaluations regarding plaintiff's mental impairments

6  provided by plaintiff's primary care physician (Dr. Sia), plaintiff's therapist

7  (Debra Nystrom), the examining physicians, and the reviewing physicians,

8  together with the "entire record," which also included statements submitted by

9  plaintiff and her daughter, as well as testimony of plaintiff and the vocational

10  expert at the administrative hearing.  (AR 14-21).  The ALJ expressly referred to

11  Dr. Sia's treatment of plaintiff, stating:

12      The [plaintiff] was treated for high blood pressure and depression by

13      her treating physician, an internal medicine doctor (Exhibit 1F) [AR

14      153-75].  He [sic] prescribed Prozac, Klonopin, and Xanax.  The

15      blood pressure was under control as evidenced by the normal readings

16      [citations omitted].

17  (AR 20).

18

19  _____

20  [6]Dr. Amado noted that there were restricted medical source statement-like psych-related statements by plaintiff's primary care doctor, presumably Dr. Sia.  (AR 211).  Dr. Amado

21  discounted such restrictions, noting that the primary care doctor was a "non-psych source" and had opined as to a matter reserved to the Commissioner.  (AR 211).

22

23  [7]The record also contains extensive records from plaintiff's therapist, Debra Nystrom, whom plaintiff saw from March 206 to at least July 2007.  (AR 213-55).  As the ALJ noted, such

24  records indicate that plaintiff received routine outpatient treatment for a depressive disorder. (AR 20).  A mental status examination apparently completed in March 2006, reflects that

25  plaintiff was oriented in four spheres, that her thoughts were congruent, and that there were no perceptual disturbances such as hallucinations.  (AR 250-53).  Her thought processes and speech

26  were normal, and there were no behavioral disturbances.  Id.  Her insight and judgment were intact.  Id.  Her motor activity was described as placid, her concentration and memory were said

27  to be impaired, and her mood as depressed.  Id.  As the ALJ noted, the therapist's notes reflect that plaintiff's condition gradually improved, with the therapist giving her repeatedly favorable

28  assessments.  (AR 21) (citing Exhibit 7F at 18, 22-24, 28 and 31 [AR 230, 234-36, 240, 243]).

1

### 2.   Pertinent Law

2   In Social Security cases, courts employ a hierarchy of deference to medical

3   opinions depending on the nature of the services provided.  Courts distinguish

4   among the opinions of three types of physicians:  those who treat the claimant

5   ("treating physicians") and two categories of "nontreating physicians," namely

6   those who examine but do not treat the claimant ("examining physicians") and

7   those who neither examine nor treat the claimant ("nonexamining physicians").

8   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

9   treating physician's opinion is entitled to more weight than an examining

10   physician's opinion, and an examining physician's opinion is entitled to more

11   weight than a nonexamining physician's opinion.[8]  See id.  In general, the opinion

12   of a treating physician is entitled to greater weight than that of a non-treating

13   physician because the treating physician "is employed to cure and has a greater

14   opportunity to know and observe the patient as an individual."  Morgan v.

15   Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

16   1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

17   The treating physician's opinion is not, however, necessarily conclusive as

18   to either a physical condition or the ultimate issue of disability.  Magallanes v.

19   Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

20   759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

21   contradicted by another doctor, it may be rejected only for clear and convincing

22   reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

23   quotations omitted).  The ALJ can reject the opinion of a treating physician in

24   favor of a conflicting opinion of another examining physician if the ALJ makes

25   findings setting forth specific, legitimate reasons for doing so that are based on

26   _____

27   [8]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
draw bright line distinguishing treating physicians from non-treating physicians; relationship is

28   better viewed as series of points on a continuum reflecting the duration of the treatment
relationship and frequency and nature of the contact) (citation omitted).

1   substantial evidence in the record.  Id.  (citation and internal quotations omitted);

2   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by

3   setting out detailed and thorough summary of facts and conflicting clinical

4   evidence, stating his interpretation thereof, and making findings) (citations and

5   quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite

6   "magic words" to  reject a treating physician opinion – court may draw specific

7   and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer

8   his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He

9   must set forth his own interpretations and explain why they, rather than the

10  [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the

11  treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,

12  602 (9th Cir. 1989).

13          **3.    Analysis**

14          Although the ALJ in this case did not discuss every piece of evidence in the

15  record, the ALJ was not required to do so.  See Howard ex rel. Wolff v. Barnhart,

16  341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  Here, the ALJ accounted

17  for all significant probative evidence of plaintiff's impairment and limitations.

18  Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ must "fully

19  account[] for the context of materials or all parts of the testimony and reports").

20  The ALJ stated that he carefully considered "the entire record" and "opinion

21  evidence" in accordance with administration regulations.  (AR 18).  He expressly

22  found that plaintiff has the severe impairment of "depressive disorder," and noted

23  that Dr. Sia was treating plaintiff for "depression."  (AR 16, 20).  The ALJ also

24  thoroughly discussed plaintiff's limitations related to depression, anxiety,

25  concentration and social functioning in his analysis of medical records from the

26  ///

27  ///

28  ///

11

1   examining psychiatrists.[9]   Simply because the ALJ did not discuss cumulative

2   opinions from Dr. Sia's progress notes regarding the same limitations does not

3   mean he failed to consider that evidence.  See Black v. Apfel, 143 F.3d 383, 386

4   (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that

5   such evidence was not considered[.]").

6        Further, the ALJ was not required to discuss Dr. Sia's December 28, 2005

7   opinion that plaintiff could not return to work until after April 2006.  There is

8   nothing inconsistent between Dr. Sia's opinion in this regard, and the ALJ's

9   residual functional capacity assessment.  Specifically, accepting Dr. Sia's

10  assessment in this regard would not establish that plaintiff was entitled to receive

11  Disability Insurance Benefits because an inability to work for four months falls

12  well short of establishing a disability for a continuous twelve-month period as is

13  required.[10]   Dr. Sia's December 28, 2005 opinion, which estimated that plaintiff

14  could not work until after April 2006, neither met the durational requirements

15  applicable to social security disability cases, nor revealed any additional functional

16  limitations not already accounted for in the ALJ's residual functional capacity

17  determination.[11]

18  ///

19

20        [9]Plaintiff also faults the ALJ for not expressly addressing Dr. Sia's note that plaintiff

21  "[woke] up at night."  (Plaintiff's Motion at 2).  Although Dr. Sia's progress notes prior to April
    2006 so reflect, plaintiff points to no evidence that she experienced this symptom or functional

22  limitations resulting therefrom (at least none which are not already accounted for in the ALJ's
    residual functional capacity assessment) for a continuous twelve-month period.

23

24        [10]See Burch, 400 F.3d at 679 (To justify payment of social security disability benefits,
    mental impairment must be expected to last "for a continuous period of not less than 12

25  months.") (citing 42 U.S.C. § 423(d)(1)(A)).

26        [11]Dr. Bagner concluded that plaintiff would be unable to work for the two-month period

27  between September 26, 2005 and November 26, 2005.  (AR 176).  Even assuming that plaintiff
    was disabled from September 26, 2005 to April 30, 2006, this seven-month period of alleged

28  disability would still fall short of the twelve-month continuous period necessary to receive
    disability benefits.

1  Accordingly, it was unnecessary for the ALJ specifically to address Dr. Sia's
2  estimate regarding the duration of plaintiff's mental inability to work.[12]

3  In light of the foregoing, a remand or reversal on this basis is not warranted.

4  **C.   The ALJ Posed a Complete Hypothetical Question to the**
5  **Vocational Expert.**

6  Plaintiff alleges that a reversal or remand is appropriate because the ALJ
7  mischaracterized the severity of plaintiff's mental limitations in the hypothetical
8  question he posed to the vocational expert.  This Court disagrees.

9  **1.   Pertinent Facts**

10  The ALJ determined that plaintiff had "the residual functional capacity to
11  perform a full range of work at all exertional levels but with moderate limitations
12  in carrying out detailed tasks, maintaining attention and concentration for
13  extended periods, and responding appropriately to changes in a work setting."
14  (AR 18).  This finding was based on the state agency psychiatrist's mental residual
15  functional capacity assessment in which such psychiatrist opined that plaintiff had
16  such "moderate[]" limitations.  (AR 20, 195-98).

17

18

19  _____

20  [12]Even assuming that the ALJ had rejected Dr. Sia's opinion in this regard, the ALJ's
    failure expressly to do so would not require reversal or remand since the four-month period in
21  issue does not meet the durational time requirement to receive benefits.  In short, an ALJ must
    provide an explanation only when he rejects "significant probative evidence."  See Vincent v.
22  Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).  Dr. Sia's opinion that
    plaintiff was unable to work for a four-month period does not meet that standard.  In any event,
23  the record contains sufficient evidence from other examining sources which would support a
    rejection of Dr. Sia's opinion of disability – even for four months.  As noted above, Dr. Bagner
24  opined that plaintiff could return to work in November 2005.  Dr. Singer observed "no
    psychiatric factors . . . that would significantly interfere with [plaintiff's] ability to complete a
25  normal day of work" other than plaintiff's reported "anxiety episodes."  (AR 179-80).  Dr.
    Amado, found plaintiff was only moderately limited in her ability to "complete a normal
26  workday and workweek without interruptions from psychologically based symptoms and to
    perform at a consistent pace without an unreasonable number and length of rest periods."  (AR
27  195-96).  Further, as noted by the ALJ, records from plaintiff's therapist likewise support the
    ALJ's conclusion that plaintiff was not disabled.  (AR 20-21) (citing Exhibit 7F [AR 213-55]).
28

1    In his decision, the ALJ stated that plaintiff was able to perform her past
2    relevant work as the president of a construction company and as a construction
3    laborer (as those jobs are normally performed) based on the testimony of the
4    vocational expert.  In the hypothetical question posed to the vocational expert at
5    the administrative hearing, the ALJ defined "moderate" limitation as follows:
6    "Moderate limitation in any area means the individual is still able to function
7    satisfactorily in that area."  (AR 44).

8                    **2.      Pertinent Law**

9    A hypothetical question posed by an ALJ to a vocational expert must set out
10   all the limitations and restrictions of the particular claimant.  <u>Light v. Social</u>
11   <u>Security Administration</u>, 119 F.3d 789, 793 (9th Cir.), <u>as amended</u> (1997) (citing
12   <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1044 (9th Cir. 1995)); <u>Embrey</u>, 849 F.2d at 422
13   ("Hypothetical questions posed to the vocational expert must set out *all* the
14   limitations and restrictions of the particular claimant . . . .") (emphasis in original;
15   citation omitted).  However, an ALJ's hypothetical question need not include
16   limitations not supported by substantial evidence in the record.  <u>Osenbrock v.</u>
17   <u>Apfel</u>, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citation omitted).

18                   **3.      Analysis**

19   Plaintiff does not dispute that the ALJ included all of plaintiff's mental
20   limitations in the hypothetical question posed to the vocational expert.  (Plaintiff's
21   Motion at 8).  Plaintiff argues, however, that the ALJ erroneously defined
22   "moderately limited" to mean that an individual could still "function
23   satisfactorily" with respect to a particular mental activity.  (Plaintiff's Motion at 6-
24   8).  Plaintiff argues that "moderately limited" mental functioning actually
25   represents a "very significant" limitation on a plaintiff's mental activity, and thus
26   the hypothetical posed to the vocational expert was incomplete.  (Plaintiff's
27   Motion at 7-8).
28   ///

14

1    While plaintiff claims that the ALJ made an arbitrary attempt to change the

2    definition of the term "moderately limited," the fact is that the hypothetical

3    question posed by the ALJ to the vocational expert was based upon the limitations

4    set forth in the state agency psychiatrist's mental residual functional capacity

5    assessment (AR 195-98), which was accepted by the ALJ.  (AR 20).  Plaintiff

6    presents no legal support for his novel definition of "moderately limited."  Cf.

7    Serna v. Astrue, 2008 WL 5179033, at *3 (C.D. Cal. Dec. 9, 2008) (Social

8    Security regulations do not provide standard definition of "moderate"; noting that

9    Eighth Circuit upheld ALJ's finding that claimant who had moderate limitation in

10   ability to respond appropriately to work pressures in usual work setting would still

11   be able satisfactorily to function in area) (citing LaCroix v. Barnhart, 465 F.3d

12   881, 888 (8th Cir. 2006)); Arriola v. Astrue, 2008 WL 4926961, at *4 (C.D. Cal.

13   Nov. 14, 2008) (noting that ALJ's definition of the term "moderate" was

14   consistent with 2006 edition of SSA Form HA-1152, which defines moderate

15   limitation as follows:  "There is more than a slight limitation in this area but the

16   individual is still able to function satisfactorily.").

17   As the ALJ identified all the limitations that he found to exist which were

18   supported by substantial evidence in the medical record, he did not pose an

19   incomplete hypothetical question to the vocational expert.  Accordingly, a remand

20   or reversal on this basis is not warranted.[13]

21       **D.    The ALJ Properly Considered Lay Witness Evidence**

22   Plaintiff contends that the ALJ failed properly to consider statements

23   provided by plaintiff's daughter, MaryAnn Galvan, and failed to provide sufficient

24   ///

25

26   _____

27   [13]Defendant correctly notes that vocational expert testimony is not required at step four.
     See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (determination at step four that claimant
     could return to past relevant work need not be supported by vocational testimony).  Here,
28   however, the ALJ expressly relied upon the testimony of the vocational expert in concluding that
     plaintiff could return to his past relevant work.  (AR 21).

reasons for disregarding her statements.  (Plaintiff's Motion at 8-10).  This Court disagrees.

### 1.   Pertinent Facts

In a "Function Report – Adult – Third Party" form dated February 22, 2006, plaintiff's daughter provided information about plaintiff's daily activities, personal care, meals, house and yard work, getting around, shopping, money handling, hobbies and interests, social activities, and information about her abilities.  (AR 124-31).  Plaintiff's daughter stated that:  (i) she saw plaintiff two or three times a week to visit, go shopping or attend church; (ii) plaintiff's medications made it difficult for her to sleep at night and made her drowsy in the daytime; (iii) plaintiff needed medication reminders; (iv) plaintiff's memory failed and at times she was unable to count money correctly; (v) plaintiff had difficulty remembering what people told her or events, had difficulty completing tasks and maintaining concentration, and had trouble remembering details; (vi) plaintiff did not handle stress well; (vii) plaintiff had increasingly "paranoid behavior;" and (viii) plaintiff "tend[ed] to 'blank out'."  (AR 124-31).

### 2.   Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be

16

1  disregarded without comment) (citations omitted); <u>Sprague v. Bowen</u>, 812 F.2d

2  1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical

3  sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to

4  work).  The standards discussed in these authorities appear equally applicable to

5  written statements.  <u>Cf</u>. <u>Schneider v. Commissioner of Social Security</u>

6  <u>Administration</u>, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to

7  consider letters submitted by claimant's friends and ex-employers in evaluating

8  severity of claimant's functional limitations).

9        In cases in which "the ALJ's error lies in a failure to properly discuss

10  competent lay testimony favorable to the claimant, a reviewing court cannot

11  consider the error harmless unless it can confidently conclude that no reasonable

12  ALJ, when fully crediting the testimony, could have reached a different disability

13  determination."  <u>Robbins</u>, 466 F.3d at 885 (quoting <u>Stout</u>, 454 F.3d at 1055-56).

14        **3.    Analysis**

15        To the extent the ALJ erroneously failed to discuss particular statements

16  made by plaintiff's daughter, any error was harmless.  The ALJ expressly noted in

17  his decision that he had considered the lay evidence.  (AR 19).  The ALJ was not

18  required to discuss every detail of the daughter's statement.  <u>See</u> <u>Black</u>, 143 F.3d

19  at 386.  In addition, as discussed below, the ALJ properly rejected aspects of the

20  daughter's statements that were inconsistent with substantial other evidence.  <u>See</u>

21  <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ did not err by

22  omitting from hearing decision discussion of "lay testimony that conflicted with

23  the available medical evidence.") (citation omitted).  Further, to the extent the ALJ

24  failed expressly to address other statements from plaintiff's daughter that simply

25  corroborated limitations the ALJ already accounted for in his decision, any error

26  ///

27  ///

28  ///

1  was harmless.[14]   See Zerba v. Commissioner of Social Security Administration,

2  279 Fed. Appx. 438, 440 (9th Cir. 2008) (failure to address husband's cumulative

3  lay testimony harmless error); Rohrer v. Astrue, 279 Fed. Appx. 437, 437 (9th Cir.

4  2008) (rejecting claimant's contention that ALJ improperly rejected lay witness

5  statement of claimant's girlfriend where such statement was cumulative of

6  statements by claimant which ALJ accepted).[15]

7        Moreover, the ALJ found plaintiff's daughter's statements "not entirely

8  credible." (AR 19). The ALJ explained that while plaintiff's daughter believed

9  plaintiff "should not go out alone," she nonetheless stated that plaintiff "shops,

10 cooks, cleans, does the laundry and is able to take care of her own personal

11 hygiene." (AR 19, 124-27). The daughter's statements were also contradicted by

12 plaintiff's own statements that she engaged in such activities, as well as "watching

13 television, reading, walking, going to church and socializing." (AR 19, 116-23).

14 The ALJ found the daughter's claims that plaintiff "is paranoid" and "has had

15 stressful nervous breakdowns" to be "inconsistent with [plaintiff's] presentation at

16 psychiatric examinations" which, as discussed above, reflect, in part, "no evidence

17 of . . . [plaintiff's] paranoia . . . ." (AR 19, 176-80).

18 ///

19

_____

20      [14]To the extent the ALJ failed to consider plaintiff's daughter's statements that "plaintiff's

21 sleeping habits ha[d] changed drastically" due to medication, any such error is harmless. Stout,
   454 F.3d at 1056; see also Robbins, 466 F.3d at 885. Plaintiff fails to demonstrate how

22 plaintiff's changed sleeping habits impaired her ability to work beyond what was already
   accounted for in the ALJ's residual functional capacity assessment. Moreover, in light of the

23 substance of the daughter's statements, plaintiff's own statements, and the medical evidence in
   the record, this Court can confidently conclude that no reasonable ALJ, even fully crediting those

24 statements from plaintiff's daughter which were not expressly addressed by the ALJ, could have
   reached a different disability determination. Plaintiff's claim that the ALJ failed to consider

25 plaintiff's "black outs" is unsupported by the daughter's own statements that plaintiff
   sporadically "blank[s] out." (AR 131). In any event, for the same reasons, any error in failing to

26 mention the evidence is harmless.

27

28      [15]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1,
   2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

1    As the ALJ expressly considered and partially rejected plaintiff's

2 daughter's statements based upon germane reasons which are supported by the

3 record, a remand or reversal on this basis is not warranted.

4    **E.    The ALJ Properly Assessed Plaintiff's Credibility**

5    Plaintiff asserts that the ALJ failed properly to evaluate plaintiff's

6 credibility.  This Court disagrees.

7    **1.    Pertinent Law**

8    An ALJ is not required to believe every allegation of disabling pain or other

9 non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d

10 597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically

11 determinable impairment that could reasonably give rise to symptoms assertedly

12 suffered by a claimant, an ALJ must make a finding as to the credibility of the

13 claimant's statements about the symptoms and their functional effect.  Robbins,

14 466 F.3d 880 at 883 (citations omitted).  Where the record includes objective

15 medical evidence that the claimant suffers from an impairment that could

16 reasonably produce the symptoms of which the claimant complains, an adverse

17 credibility finding must be based on clear and convincing reasons.  Carmickle v.

18 Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir.

19 2008) (citations omitted).  The only time this standard does not apply is when

20 there is affirmative evidence of malingering.  Id.  The ALJ's credibility findings

21 "must be sufficiently specific to allow a reviewing court to conclude the ALJ

22 rejected the claimant's testimony on permissible grounds and did not arbitrarily

23 discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th

24 Cir. 2004).  The ALJ must "specifically identify the testimony [the ALJ] finds not

25 to be credible and must explain what evidence undermines the testimony."

26 Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).

27    To find the claimant not credible, an ALJ must rely on (1) reasons unrelated

28 to the subjective testimony (e.g., reputation for dishonesty); (2) internal

19

1    contradictions in the testimony; or (3) conflicts between the claimant's testimony

2    and the claimant's conduct (*e.g.*, engaging in daily activities inconsistent with the

3    alleged symptoms, maintaining work inconsistent with the alleged symptoms,

4    failing, without adequate explanation, to take medication, to seek treatment or to

5    follow prescribed course of treatment). Lingenfelter v. Astrue, 504 F.3d 1028,

6    1035-40 (9th Cir. 2007); Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch,

7    400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard a claimant's

8    testimony solely because it is not substantiated affirmatively by objective medical

9    evidence, the lack of medical evidence is a factor that the ALJ can consider in his

10   credibility assessment. Burch, 400 F.3d at 681.

11       Questions of credibility and resolutions of conflicts in the testimony are

12   functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th

13   Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable

14   and is supported by substantial evidence, it is not the court's role to "second-

15   guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

16                    **2.    Analysis**

17       The ALJ presented clear and convincing reasons for discounting plaintiff's

18   statements regarding her subjective symptoms, and thus did not materially err in

19   his assessment of plaintiff's credibility.

20       First, in assessing credibility, the ALJ may properly rely on inconsistencies

21   between plaintiff's statements and her conduct. See Thomas, 278 F.3d at 958-59

22   (inconsistency between the claimant's testimony and the claimant's conduct

23   supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d

24   1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and

25   actions cited as clear and convincing reason for rejecting claimant's testimony).

26   Here, the ALJ found plaintiff's allegations regarding the severity of her symptoms

27   and related limitations "not entirely credible" because plaintiff engaged in

28   ///

1  significant activities of daily living inconsistent with such allegedly severe

2  limitations.[16]  (AR 19).

3      Second, an ALJ may discredit a plaintiff's subjective symptom testimony

4  due, in part, to the absence of supporting objective medical evidence.  Burch, 400

5  F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be

6  rejected on the sole ground that it is not fully corroborated by objective medical

7  evidence, the medical evidence is still a relevant factor in determining the severity

8  of the claimant's pain and its disabling effects.") (citation omitted).  Here, the ALJ

9  reasonably concluded that plaintiff's subjective symptom allegations were

10  "inconsistent with [plaintiff's] presentation at the psychiatric examinations . . . ."[17]

11  (AR 19).

12      The foregoing reasons, by themselves, constituted clear and convincing

13  reasons which provide a sufficient basis upon which to reject plaintiff's testimony

14  and statements.  As the ALJ made specific findings stating clear and convincing

15  reasons supported by substantial evidence for disbelieving plaintiff, the ALJ's

16

17  ─────────────────

18  [16]The ALJ noted that plaintiff "shops, cooks, cleans, does the laundry, drives[,] takes care
   of personal hygiene needs" and engages in other activities such as "watching television, reading,
19  walking, going to church, and socializing."  (AR 19).

20      [17]Reports from examining Drs. Bagner and Singer reflect the following:

21          [Plaintiff] was alert and oriented to person, place, and time.  There was no
22      evidence of auditory or visual hallucinations or paranoid delusions.  Memory and
       concentration were not markedly impaired.  Speech was normal, affect stable and
23      thought processes were clear.  There was no paranoia and the claimant specifically
       denied hallucinations.  The claimant was able to complete the mental status
24      examination and follow instructions without difficulty.  Her ability to carry out
       simple tasks was unimpaired and only mildly impaired in complex tasks.  No
25      psychiatric factors were identified that would significantly interfere with the
26      claimant's ability to complete a normal work day other than the reported anxiety
       episodes, which were not observed during the examination.
27

28  (AR 19, 176-80).

credibility determination was not materially erroneous.  Accordingly, a remand or reversal on this basis is not warranted.

## V.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 16, 2009

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE